IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-CR-0066-02 |
| JAMES NOLE | : | |

**SURRICK, J.**                                                                                               **JULY 25, 2006**

## MEMORANDUM & ORDER

Presently before the Court is Defendant James Nole's Motion To Suppress Evidence (Doc. No. 20). A suppression hearing was held on June 21, 2006 and July 13, 2006. For the following reasons, Defendant's Motion will be denied.

**I.    FINDINGS OF FACT**

Shortly after 6:45 p.m. on April 7, 2004, Philadelphia Police Officer Marcus Allen commenced a surveillance of the property at 434 East Cosgrove Street ("the property"), located on the southeast corner of Ross and Cosgrove Streets in Philadelphia. Citizens of this neighborhood had previously complained to police of narcotic activity in the area.[1] Allen conducted the surveillance from an undisclosed location approximately eighty or ninety feet from the property. He was accompanied by four other police officers, including his supervisor at the time, Sergeant Shawn Wilson. (June 21, 2006 Tr. at 16.) These officers were waiting nearby in two automobiles. (*Id.* at 16.)

Allen observed two black males in the area of 434 East Cosgrove Street. (*Id.* at 10-11.) One male, identified as Co-Defendant James Goode, was standing next to the front steps of the

---

[1] The area of Ross and Cosgrove Streets is a high drug-trafficking area. Allen estimated that "anywhere from 50 to 100" narcotics arrests had been made in this area in the three- to four-month period preceding the surveillance. (June 21, 2006 Tr. at 8.)

property.  Allen knew Goode to be a narcotics seller.  (*Id.* at 13.)  The other male, identified as Defendant Nole, was seated on the front steps of the property.  Allen knew that Nole had previously been arrested for narcotics violations.  (*Id.*)  Approximately ten minutes into his surveillance, Allen observed a white minivan pull up to the corner of Ross and Cosgrove Streets.  An unidentified black male exited the vehicle and approached Nole and Goode.  After a brief conversation, the unidentified man handed United States currency to Goode.  Goode then said something to Nole, who immediately stood up and entered the house at 434 East Cosgrove Street.  When Nole emerged approximately ten to fifteen seconds later, he handed the unidentified man a small item or items.  The unidentified man reentered the minivan, which drove away.  (*Id.* at 15.)

      Approximately ten to fifteen minutes later, Allen observed a black female walking westbound on Cosgrove Street towards the property.  (*Id.* at 18.)  She approached Nole and Goode, who had resumed their respective positions on and near the front steps of 434 East Cosgrove.  The black female engaged in a brief conversation with Nole and Goode and then handed money to Goode.  (*Id.* at 19.)  Goode again said something to Nole, who entered the property.  Ten to fifteen seconds later, Nole emerged and handed the woman a small item or items.  The woman then proceeded eastbound along Cosgrove Street for thirty or forty feet before entering another house.  (*Id.*)  Upon observing these two exchanges and based upon his extensive experience as a narcotics officer, Allen was satisfied that he had witnessed Goode and Nole engaging in narcotics transactions.  (*Id.* at 22.)

      Ten minutes after the unidentified female's departure, Allen observed what he believed to be "spotters" or "lookouts" in the area.  (*Id.* at 19-20.)  Based on the movement and gestures of

these individuals, Allen thought that his backup officers had been identified as police. The surveillance was then terminated, and Allen was picked up by one of the backup teams. The officers proceeded to 434 East Cosgrove Street to conduct further investigation. As the officers exited their vehicles and announced themselves as police, Allen heard Goode say to Nole, "Close the door, it's the police." (*Id.* at 22.) Nole, who had been seated on the front steps, jumped up and ran into the house, attempting to close the door behind him. Allen and another officer pursued Nole inside. (*Id*. at 23.) Nole was apprehended inside the property.

As Allen apprehended Nole inside the house, he observed in plain view two boxes of ammunition, two handguns, a scale, a large rock wrapped in clear plastic which appeared to be crack cocaine, small purple packets which appeared to contain crack cocaine, clear glass jars containing what appeared to be marijuana, scattered United States currency, and a large brown box containing wrapped and unused clear jars. (*Id.* at 24-25.) These items were all clearly visible on one of two counters, on open shelves, in an open drawer, and on the floor. (*Id.*) Allen also observed a television, which was broadcasting images from two cameras directed to the area immediately outside the house. (*Id.* at 30.) A search of the Defendants revealed that Nole was carrying $696 and Goode was carrying $2559. (*Id.* at 27.) Based on the observations of Allen and his fellow officers, a search warrant was obtained for the first-floor apartment at 434 East Cosgrove Street. Upon execution of the search warrant, police seized the above items as well as a large bag of marijuana and a vial of pills. (*Id.* at 31.)

The suppression hearing testimony of Officer Allen was corroborated by the testimony of Sergeant Wilson. (July 13, 2006 Tr. at 20-24.) The Court finds the testimony of both Officers to be credible.[2]

Defendant Nole seeks to suppress the physical evidence recovered from 434 East Cosgrove Street and the evidence seized from his person. He alleges that the police had no probable cause to arrest him and that the initial entry into the property was illegal and in violation of his Fourth Amendment rights. (Doc. No. 20.) Defendant also claims that the search warrant for the property was "invalid on its face as the facts contained therein did not establish probable cause for [its] issuance." (*Id.* ¶ 6.) Defendant contends that the evidence seized constitutes the fruit of an illegal search and cannot be used against him at trial. (June 21, 2006 Tr. at 3.)

## II.   CONCLUSIONS OF LAW

### A.   Fourth Amendment Standing

As an initial matter, the Government argues that Defendant had no legitimate expectation of privacy in 434 East Cosgrove Street and, therefore, cannot object to the search. The Government is correct. (Doc. No. 31 at 3-5.) The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The ability to exercise one's Fourth

---

[2] Defendant presented one witness at the suppression hearing, Lenard Whitaker. Whitaker testified on both direct and cross-examination at the hearing on June 21st. However, on the advice of counsel, he refused to answer any questions when the Government attempted to recall him for additional cross-examination on July 13th, instead invoking his Fifth Amendment privilege against self-incrimination. The Government initially requested that Whitaker's testimony be stricken from the record but retracted this request at the close of the suppression hearing on July 13th. (July 13, 2006 Tr. at 4, 45-46.)

Amendment right, however, is limited. It is considered a "personal right that must be invoked by an individual. . . . [T]he extent to which [it] protects people may depend upon where those people are." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (internal citation omitted); *see also Katz v. United States*, 389 U.S. 347, 351 (1967) ("The Fourth Amendment protects people, not places."). The Supreme Court has limited the "capacity to claim the protection of the Fourth Amendment" to those who have a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Moreover, the expectation of privacy must be a "reasonable one." *Florida v. Riley*, 488 U.S. 445, 455 (1989) (O'Connor, J., concurring).

The burden of establishing that one's Fourth Amendment right was violated by a challenged search and seizure falls to the proponent of the motion to suppress. *Rakas*, 429 U.S. 131 n.1. This entails providing proof of the movant's legitimate expectation of privacy in the premises searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). By challenging Defendant's "standing" in its Supplemental Response (Doc. No. 31) and again raising the issue at the suppression hearing (June 21, 2006 Tr. at 3), the Government placed Defendant on "notice that [he] was to be put to [his] proof on any issue as to which [he] had the burden." *Rakas*, 439 U.S. at 132 n.1. This includes the issue of whether he possessed a sufficient legal interest in the subject premises to bring the instant Motion.

Defendant has completely failed to meet his burden in this regard. In fact, Defendant erroneously argued that the Government bore the burden of proof on this issue. (June 21, 2006 Tr. at 3-4.) Officer Allen testified that Defendant was an active participant in the distribution of illegal drugs out of 434 East Cosgrove Street. Other than this, no testimony was presented detailing the nature and scope of Defendant's presence at the property. The Government

produced several documents which established that Defendant did not reside at the 434 East Cosgrove Street but rather lived at another address in Philadelphia.  (June 21, 2006 Tr. at 62-63.) This evidence was supported by Defendant's own witness, who recalled having heard Defendant tell police that he lived on Mechanic Street not Cosgrove Street.  (*Id.* at 71.)  Defendant did not testify at the suppression hearing and presented no evidence or testimony concerning his relationship to the 434 East Cosgrove Street property.

      While a movant is not necessarily required to show an ownership or possessory interest in the property in question, mere presence on the premises is not sufficient to create an expectation of privacy.  *See Carter*, 525 U.S. at 97 (Scalia, J., concurring) (no expectation of privacy where accused visited premises for sole purpose of packaging narcotics).  Moreover, the fact that Defendant is charged with crimes of possession does not entitle him to automatic standing to challenge the legality of the search.  *See United States v. Salvucci*, 448 U.S. 83, 85 (1980) ("Today we hold that defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated.  The automatic standing rule of *Jones v. United States* . . . is therefore overruled.").  In this case, Defendant has offered no evidence of any kind indicating that he had an expectation of privacy in the subject property.  Simply entering the house momentarily for the purpose of retrieving drugs for sale on the street does not create that expectation.  Accordingly, Defendant cannot challenge the search of 434 East Cosgrove Street.  Defendant's Motion to Suppress must be denied to the extent that it seeks suppression of evidence recovered from the Cosgrove Street address.

### B.	Presence of Probable Cause to Arrest Defendant

A warrantless public arrest does not violate the Fourth Amendment "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). To determine whether an officer had probable cause to arrest an individual, a court must "examine the events leading up to the arrest, and then 'decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). This determination is made based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-32 (1983).

In this case, there are a number of factors which militate in favor of a finding that probable cause existed. First, Defendant and Goode were twice observed "participat[ing] in a surreptitious passing of a small package" in exchange for cash. *United States v. Persaud*, No. Cr. A. 02-113, 2003 WL 21639454, at *3 (D. Del. July 3, 2003); *see also United States v. Taylor*, 997 F.2d 1551, 1552, 1554 (D.C. Cir. 1993) (probable cause existed where police observed one defendant accepting cash and the other retrieving drugs in street-corner narcotics sales operation); *United States v. Washington*, No. 02 CR 1574, 2003 WL 21250681, at *1-3 (S.D.N.Y. May 29, 2003) (similar exchange warrants finding of probable cause, even where no drugs were eventually found on Defendant's person). In addition, these transactions occurred in an area known for drug trafficking. *See United States v. Davis*, 458 F.2d 819, 821 (D.C. Cir. 1972) ("Although no presumption of guilt arises from the activities of inhabitants of an area in which the police know that narcotics offenses frequently occur, the syndrome of criminality in those areas cannot realistically go unnoticed by the judiciary."); *Persuad*, 2003 WL 21639454, at

\*4 (geographical area may support finding of probable cause).  Moreover, Allen was personally familiar with the fact that both Nole and Goode were involved in narcotics activities.  *See United States v. Johnson*, 427 F.2d 32, 34 (7th Cir. 1970) (defendant's reputation for participation in illegal activities is affirmative factor towards finding of probable cause).  When police officers approached Defendant and Goode, Goode ordered Defendant to "[c]lose the door" to the house where the drugs were kept.  Defendant immediately fled into the property attempting to close the door behind him.  *See United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995) ("[I]n combination with other facts and circumstances, flight from an officer may create probable cause . . . .").  Finally, we note that Allen and Wilson are both veteran police officers with extensive experience in narcotics investigations.  Both have made numerous arrests for narcotics violations.  Based upon their experience and observations, they concluded that Nole and Goode were selling illegal drugs.  *See Persaud*, 2003 WL 21639454, at \*3 ("[I]ndividual experience of an arresting officer is a relevant factor for evaluation [of probable cause.]"); *Davis*, 458 F.2d at 822 ("[C]onduct innocent in the eyes of the untrained may carry entirely different messages to the experienced or trained observer.")

    Viewing the totality of the circumstances, it is clear that these officers had probable cause to believe that Goode and Nole were committing a criminal offense.[3]  The arrest of Defendant

---

[3] Defendant now argues that the officers lacked probable cause because "their intention was not to arrest Mr. Nole, but rather to warn him that they were suspicious that he was involved in drug sales, and to warn him not to continue to do so." (Letter brief from Defense Counsel to the Court dated July 20, 2006.)  This argument is without merit.  The law is clear that an "officer's subjective motivation is irrelevant" to a determination of probable cause.  *Brigham City v. Stuart*, 126 S. Ct. 1943, 1948 (2006).  "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action." *Id.* (internal quotation omitted).  Whether the officers approached Defendant intending to arrest, investigate, or merely warn has no bearing on our

was lawful and did not violate his constitutional rights. Moreover, a search of an individual incident to a lawful arrest is permissible under the Fourth Amendment. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) ("[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."). Accordingly, there is no basis upon which to suppress the evidence recovered from the person of Defendant.

### C. Lawfulness of Entry into Property and Execution of Search Warrant

Notwithstanding our conclusion that Defendant has no basis upon which to challenge the search of 434 East Cosgrove Street, we will briefly discuss Defendant's claim that the search of the property was preceded by an illegal entry and that the search warrant that was ultimately issued was invalid. (Doc. No. 20 ¶¶ 4, 6.) Generally, police may not enter a property without a warrant to search the premises. Warrantless entry is permissible, however, in the presence of probable cause and valid "exigent circumstances." *United States v. Sculco*, 82 F. Supp. 2d 410, 417 (3d Cir. 2000).

The police officers had probable cause to arrest Defendant. Moreover, based on Defendant's conduct upon the arrival of the police, it is clear that sufficient exigent circumstances existed to justify the entry of the officers into the property. "The Supreme Court has indicated that generally, there are exigent circumstances present where evidence is in danger of being destroyed [or] a suspect is likely to disappear." *Sculco*, 82 F. Supp. 2d at 417. The presence of exigent circumstances is based upon an evaluation of the "totality of the circumstances" and hinges on whether a police officer "was objectively reasonable at the time in

---

ultimate determination.

question, based on the reasonably discoverable information available to [him]." *Id.* (citing *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973); *United States v. Tibolt*, 72 F.3d 965, 969 (1st Cir. 1995)). Here, Defendant immediately fled into the house when police approached. The police officers pursued Defendant into the house. It is clear that Defendant could have destroyed evidence in the home or evaded capture by escaping through the back door. Accordingly, the police officers' pursuit of Defendant into the home was lawful.[4] *See United States v. Santana*, 427 U.S. 38, 42, 43 (1976) (warrantless entry justified under "hot pursuit" doctrine when suspect retreated from doorway of house into vestibule upon seeing police).

Upon entering 434 East Cosgrove Street, Officer Allen observed contraband without having to undertake any search. The contraband was in plain view. It is a well-recognized exception to the Fourth Amendment's warrant requirement that, under certain circumstances, the police may seize contraband and other incriminating evidence discovered in plain view. *Horton v. California*, 496 U.S. 128, 141 (1990). Warrantless seizures of incriminating evidence in plain view are lawful upon the satisfaction of three well-defined elements. *Id.* at 136-137. First, the police "must not have violated the Fourth Amendment in 'arriving at the place from which the evidence could be plainly viewed.'" *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (quoting *Horton*, 496 U.S. at 136). Second, the incriminating character of the evidence in plain view must be immediately apparent to the officer. *Horton*, 496 U.S. at 136. Finally, an officer

---

[4] Defendant cites *United States v. Velasquez*, 626 F.2d 314 (3d Cir. 1980), in support of his Motion. *Velasquez* is inapposite. (Doc. No. 38 at 5.) In *Velasquez*, there was no evidence of flight. 626 F.2d at 317. The defendants in that case only became aware of the presence of police upon the officers' forcible entry into the house. *Id*. Moreover, the contraband discovered therein was not in plain view, but was subsequently uncovered during a general search of the premises. *Id.* at 318.

"must also have a lawful right of access to the object itself." *Id.* at 137. We have determined that Allen's entry into the property was not a Fourth Amendment violation. He was pursuing a suspect who was fleeing from police. Once inside, Allen saw contraband, including firearms and narcotics, in plain view. Allen and his fellow officers could have seized this evidence at that time, without obtaining a warrant.

Nevertheless, the officers took the additional step of obtaining a warrant. The probable cause necessary to support that warrant was based on the plain-view observations of the officers and the circumstances of Defendant's arrest, all of which were perfectly lawful. Defendant argues that the warrant was "invalid on its face as the facts contained therein did not establish probable cause for [its] issuance." (Doc. No. 20 ¶ 6.) Defendant is wrong. When reviewing whether a search warrant was based on sufficient probable cause, we adopt a deferential standard. *United States v. Ritter*, 416 F.3d 256, 264 (3d Cir. 2005). A warrant will be deemed valid as long as the issuing judge had a "substantial basis" for concluding that probable cause existed. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). A "substantial basis" is said to exist where, "given all the circumstances set forth in the affidavit before [the issuing judge] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. In this instance, the police had already lawfully observed drug transactions in front of 434 East Cosgrove Street and contraband within the confines of the property. Obviously, the issuing judge had a "substantial basis" for concluding that probable cause existed. Defendant's contention is completely devoid of merit.

### III. CONCLUSION

For these reasons, we conclude that Defendant has presented no basis whatsoever for the suppression of the evidence seized during the search of his person or the search of the 434 East Cosgrove Street, a property in which he had no expectation of privacy. Accordingly, Defendant's Motion to Suppress will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-CR-0066-02 |
| JAMES NOLE | : | |

**ORDER**

AND NOW, this 25th day of July, 2006, upon consideration of Defendant James Nole's Motion To Suppress Evidence (Doc. No. 20) and all papers filed in support thereof and in opposition thereto, and after a hearing in open court, it is ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

/s R BARCLAY SURRICK

_____
R. Barclay Surrick, Judge