IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-CR-0066-02 |
| JAMES NOLE | : | |

**SURRICK, J.**                                             **SEPTEMBER 22, 2006**

## MEMORANDUM & ORDER

Presently before the Court is Defendant's Combined Motion And Memorandum For A New Trial Under Rule 33 (Doc. No. 55). For the following reasons, Defendant's Motion will be denied.

## I.      BACKGROUND

The evidence and testimony at trial established that on April 7, 2004, at about 6:45 p.m., Officer Marcus Allen and other Philadelphia police officers were conducting a drug surveillance of 434 East Cosgrove Street in Philadelphia. Allen had extensive experience as a narcotics officer investigating street level drug transactions. Allen and the other officers were located some distance away from 434 Cosgrove Street. Allen observed two black males in front of the Cosgrove Street address. One of the individuals, Defendant James Nole, was seated on the front steps of the property. The other, James Goode, was standing near the steps. While conducting the surveillance, Allen saw a white minivan pull up to the corner of Ross and Cosgrove Streets and saw a black male exit the vehicle. The black male walked up to Goode and Nole and handed money to Goode. Goode then said something to Nole, who got up and went into the house at 434 Cosgrove Street. Ten to fifteen seconds later, Nole came out of the house and handed a small object to the black male. The black male got back into the minivan and left the area. Shortly

thereafter, a black female walked down the street, approached Goode, and handed him money. Again, Goode said something to Nole, who got up and went into the house. Ten to fifteen seconds later, Nole emerged from the house, walked up to the black female, and handed her a small object. The woman then continued walking down the street and entered a house further down the block on Cosgrove Street. After observing what he believed to be two street-level drug transactions, Allen and the other officers decided to approach Goode and Nole. As they exited their police vehicles, Goode said to Nole: "close the door, it's the cops." Nole jumped up, ran into the house, and closed the door. Allen and another officer followed Nole into the house. Nole was apprehended inside 434 Cosgrove Street. Inside the house, Allen saw in plain view two hand guns and ammunition, a large rock of crack cocaine, a scale, a number of small purple packets of crack cocaine, and clear glass jars containing marijuana. Goode and Nole were arrested and searched. Nole was carrying $696 in cash, and Goode was carrying $2559 in cash. A search warrant was obtained for the property and upon execution of the warrant, police seized other contraband and drug paraphernalia was seized by the police.

Defendant was indicted on charges of conspiracy to possess cocaine base (crack) with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count 1); aiding and abetting the possession of cocaine base (crack) with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2 (Count 2); possession of cocaine base (crack) with the intent to distribute within 1000 feet of a school in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count 3); possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) and 18 U.S.C. § 2 (Count 4); and possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 846, 841(a)(1), and 18 U.S.C. § 924(c)(1)(A)

(Count 5).  (Doc. No. 1.)  Prior to trial, Defendant filed a Motion To Suppress the evidence

seized by the police. (Doc. No. 20.)  Following a suppression hearing, the Motion to Suppress

was denied.[1] (Doc. No. 41.)  At trial, Defendant was found guilty by a jury on Counts One, Two,

Three, and Four.

## II.   LEGAL STANDARD

Rule 33(a) of the Federal Rules of Criminal Procedure provides that the court may

exercise its discretion to grant a defendant a new trial if required in the interest of justice.[2]  Such

motions should be granted sparingly and only where the failure to do so would result in a

miscarriage of justice.  *See United States v. Copple*, 24 F.3d 535, 547 n.17 (3d Cir. 1994).  In

considering a motion under Rule 33, "[t]he court may weigh the evidence, but may set aside the

verdict and grant a new trial only if it determines that the verdict constitutes a miscarriage of

justice, or if it determines that an error at trial had a substantial influence on the verdict."  *United

States v. Enigwe*, Crim. A. No. 92-00257, 1992 WL 382325, at *4 (E.D. Pa. Dec. 9, 1992)

(citation omitted).  In contrast to motions for judgment of acquittal under Rule 29, a motion for a

new trial does not require the court to view the evidence in the light most favorable to the

government.  Rather, the court must weigh the evidence and evaluate the credibility of witnesses.

*See United States v. Rennert*, No. Crim. A. 96-51, 1997 WL 597854, at *17 (E.D. Pa. Sept. 17,

1997) (citing *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985)).

---

[1]  A Memorandum and Order containing Findings of Fact and Conclusions of Law was filed on July 25, 2006.  (Doc. No. 41.)

[2] Federal Rule of Criminal Procedure 33(a) provides, in pertinent part:  "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."

### III.    LEGAL ANALYSIS

Defendant argues that he is entitled to a new trial because the Court erred in two respects.

Defendant contends that the Court erred in sustaining the Government's objection to questions

asked of the arresting officer on cross-examination concerning his warrantless entry into the

house at 434 Cosgrove Street.  Defendant contends that the questions were designed to elicit the

officer's state of mind, and not to suggest that the entry was illegal.  Next, Defendant contends

that the cautionary instruction given to the jury after sustaining the Government's objection was

error justifying the grant of a new trial.  One need only read the trial transcript to realize that

Defendant's argument is totally without merit if not disingenuous.  The trial transcript reveals the

following relevant cross-examination of officer Marcus Allen by defense counsel:

| | |
|---|---|
| Mr. Newman: | And – now, let me go to the sequence that you – you tell this jury happened when you approached Mr. Nole in order to tell him not to do this again. |
| | You – I – you jumped out of the police car with the other officers, right? |
| PO Allen: | I exited the police car, correct. |
| Mr. Newman: | And you already had police ID hanging from your neck? |
| PO Allen: | Correct, badge and identification. |
| Mr. Newman: | And you identified yourself as a police officer, didn't you? |
| PO Allen: | Yes, I did. |
| Mr. Newman: | And the other officers did, too, everybody's shouting police, right? |
| PO Allen: | Yes. |
| Mr. Newman: | And at that point, Mr. Goode – the heavy-set individual – says: Close the door, it's the cops? |
| PO Allen: | That is correct. |
| Mr. Newman: | After you've already ID'd yourselves as cops and you've got something hanging from your neck, he says: Close the door, it's the cops? |
| PO Allen: | Correct. |
| | With badge and identification hanging from my neck, again – |
| Mr. Newman: | Okay. |
| PO Allen: | - - yes. |
| Mr. Newman: | I see. |
| | And then, according you, Mr. Nole jumps up – he's five feet from |

|  |  |
|---|---|
|  | you, right? |
| PO Allen: | About, yes. |
| Mr. Newman: | And he's sitting on those steps? |
| PO Allen: | Correct. |
| Mr. Newman: | And you're a few feet away from the steps, right? |
| PO Allen: | Correct. |
| Mr. Newman: | And he jumps up and he runs in the door of this house and you – actually, another officer – and you grab him several feet inside the house? |
| PO Allen: | This is correct. |
| Mr. Newman: | And so, he didn't, for example, try to get away and run down the street, did he? |
| PO Allen: | No. |
| Mr. Newman: | And he wasn't just standing there, was he? I mean, you didn't just arrest him standing there, did you? |
| PO Allen: | Standing where? |
| Mr. Newman: | Outside? |
| PO Allen: | Again, he ran in to the property and myself and Officer LaCorte (ph) stopped him inside of the property. |
| Mr. Newman: | Okay. And at the time you went in there, of course, you had no search warrant, did you? |
| PO Allen: | No, I did not. |
| Mr. Newman: | Okay. And in order to get in the house, you needed some method to get in the house, a search warrant or some other – |
| Mr. Inden: | Objection your Honor. |
| Mr. Newman: | – method, correct? |
| The Court: | Objection sustained. |
| Mr. Inden: | Your Honor, may we approach? |
| The Court: | Yes. |
| (Discussion at side bar held on the record.) | |
| Mr. Inden: | Your Honor, I have some – some concern with Mr. Newman's latest question, the implication being that the police now did something that they weren't allowed to do. Would your Honor consider instructing the jury that – |
| The Court: | The police did nothing improper? |
| Mr. Inden: | Yea, that or – |
| The Court: | I will certainly – |
| Mr. Newman: | I object to that, your Honor. |
| The Court: | Well, you can object, but you raised the issue improperly, Counsel. |
| Mr. Newman: | May I state my reason for what I asked him?  My intent is to ask further questions, which go to his state of mind.  It has nothing to do with the legality of the search. |

| | |
|---|---|
| The Court: | Well, the way you asked the question was improper and I will caution the jury. |
| Mr. Newman: | Well, I object, your Honor. |
| (Concluded at side bar.) | |
| The Court: | Ladies and gentlemen, with regard to the police entering the house, the police did nothing improper in entering the house.  All right. |
| By Mr. Newman: | |
| Mr. Newman: | Well, let's – let's talk about what you were thinking. I'm not concerned about the legality or anything of that nature. I'm concerned about what was in your mind. And – (Pause) If your Honor would indulge me a moment? |
| The Court: | Yes, indeed. |
| (Pause) | |
| Mr. Newman: | We, you were – when you approached Mr. Nole – just to make it real clear – you weren't intending to arrest him at that point in time, were you? |
| PO Allen: | No, I was not. |
| Mr. Newman: | You were just gonna have a chat with him and Mr. Goode, right? |
| PO Allen: | Get their information and put it on a docket – yes. |
| Mr. Newman: | And the reason why you weren't going to arrest them is because – from what you told this jury you heard – you assumed that there were no drugs on their person, you assumed that the drugs were inside the house, right? |
| PO Allen: | Yes. |
| Mr. Newman: | So – (Pause) |
| Mr. Newman: | And your intention, again, was to get their names and other information as a pedestrian stop or other minimum identification – |

(August 2, 2006 Trial Tr. at 5-8).

Defendant argues that he was only attempting to establish the officer's state of mind when questioning Officer Allen concerning whether he had a search warrant to enter the property. (Doc. No. 55.)  We fail to see the relationship between the existence or non-existence of a search warrant and the officer's state of mind as it related to his intentions with regard to Defendant. Defense counsel's line of questioning can more appropriately be characterized as a thinly-veiled

attempt to portray the police as acting illegally.  In our Memorandum and Order denying

Defendant's Motion To Suppress, we determined that the police had not violated Defendant's

constitutional rights and had acted lawfully when they entered the premises at 434 Cosgrove

Street.  (Doc. No. 41.)  The clear implication of counsel's question was that the police had acted

improperly by entering the property without a search warrant.  The question was improper.  It is

interesting to note that after the government's objection was sustained and the cautionary

instruction was given, defense counsel went on to question Officer Allen about his intentions as

he approached Defendant.  Counsel was able to make his point without any reference to a search

warrant.

     In addition, the cautionary instruction that the police had not acted improperly when they

entered the house was necessitated by counsel's improper questions.  It is not error for a court to

correct a misimpression created by defense counsel's inappropriate question.  *See Bass v.

Chesney*, Civ. No. 02-8547, 2005 WL 1941661, at *4 (E.D. Pa. Aug. 10, 2005) (citing

*Commonwealth v. Bass*, 674 A.2d 311, 2 (Pa. Super. Ct. Dec. 8, 1995) (court acted properly by

giving "immediate and detailed cautionary instruction"); *see also Floyd v. Wilson*, 541 F. Supp.

818, 821-22 (E.D. Pa. 1982) (citing *Arizona v. Washington*, 434 U.S. 497, 513-14 (1978) (trial

judge is "in the best position to assess the extent of prejudice, its impact on the jury and

likelihood that such a taint can be satisfactorily cured by cautionary instructions")).  The

propriety of the conduct of the police in entering 434 Cosgrove Street was resolved by the Court

in the Memorandum and Order of July 25, 2006.  It was not a matter for the jury's consideration.

*See United States v. McCullough*, Civ. No. 04-20006, 2005 WL 309944, at *12 (D. Kan. Feb. 7,

2005) (finding court's jury instruction "entirely appropriate and even necessary in light of

[defense counsel's] continued efforts throughout the trial to create a question about the legality of the search-an issue that was clearly not for the jury to resolve").

**IV.**     <u>**CONCLUSION**</u>

The evidence against James Nole was overwhelming.  It established that he and James Goode were selling drugs out of 434 Cosgrove Street.  Counsel's question regarding the entry into the Cosgrove Street house by the police without a warrant was improper.  The cautionary instruction to the jury was both necessary and appropriate.  Accordingly, Defendant's Motion For A New Trial will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA :
                                                  :         CRIMINAL ACTION
                         v.                       :
                                                  :         NO. 06-CR-0066-02
JAMES NOLE                                        :


## ORDER

AND NOW, this 22nd day of September, 2006, upon consideration of Defendant James

Nole's Combined Motion And Memorandum For A New Trial Under Rule 33 (Doc. No. 55) and

all papers filed in support thereof and in opposition thereto, it is ordered that the Motion is

DENIED.

IT IS SO ORDERED.


BY THE COURT:


S/ R. Barclay Surrick
U.S. District Court Judge